## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| RONALD COUTURE,<br>    Plaintiff | :<br>:<br>: |
| v. | :   C.A. No.:<br>: |
| TOWN OF WEST WARWICK,<br>by and through its Treasurer, **ROSEMARIE SILVA,**:<br>    Defendant | :<br>:<br>: |

## COMPLAINT

### I. Introductory Statement

This action is brought by the Plaintiff seeking declaratory and injunctive relief, attorney's fees and litigation expenses and other equitable relief, including back pay, as well as compensatory, and exemplary damages to remedy unlawful conduct the Plaintiff suffered in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, *et seq.* ("ADA"), the Rhode Island Civil Rights of People with Disabilities Act, R.I.G.L. §42-87-1, *et seq.* ("CRPD"), the Rhode Island Fair Employment Practices Act, R.I.G.L. §28-5-1, *et seq.* ("FEPA"), and the Rhode Island Civil Rights Act, R.I.G.L. §42-112-1, *et seq.* ("RICRA").

### II. Parties

1. The Plaintiff is a resident of the Town of West Warwick, State of Rhode Island.

2. Defendant Town of West Warwick ("Town") is a duly authorized and organized municipality pursuant to the laws of the State of Rhode Island and is sued by and through its treasurer, Rosemarie Silva, the official designated by State Law, R.I.G.L. §45-15-5, to be named in a suit for relief against the Town.

### III. Jurisdiction

3. This Court has jurisdiction over the Plaintiff's claims under the ADA pursuant to 42 U.S.C. §12117 and supplemental jurisdiction over the Plaintiff's claims under the CRPD, the FEPA, and the RICRA pursuant to 28 U.S.C. §1367.

## IV. Venue

4. Venue is proper in this Court insofar as a substantial portion of the events or omissions giving rise to the within claim occurred in the State of Rhode Island in compliance with the requirements set forth in 28 U.S.C. §1391.

## V. Exhaustion of Administrative Remedies

5. On or about July 13, 2018, the Plaintiff timely filed a charge of discrimination against Defendant Town with the Rhode Island Commission for Human Rights ("RICHR"), RICHR No. 19 EPD 018-40/40, and the United States Equal Employment Opportunity Commission ("EEOC"), EEOC No. 16J-2018-00332.

6. On or about November 2, 2018, more than one hundred twenty (120) days, but less than two (2) years after the charge was filed, the Plaintiff requested that the RICHR and the EEOC issue a right to sue letter.

7. On or about November 9, 2018, the Plaintiff was issued a notice of right to sue by the RICHR and has timely instituted suit thereon.

8. On or about November 28, 2018, the Plaintiff was issued a notice of right to sue by the EEOC and has timely instituted suit thereon.

9. The RICHR failed to act upon the Plaintiff's charge of discrimination within sixty (60) days of the filing of the charge and thus the Plaintiff's CRPD claim is properly before this Court pursuant to R.I.G.L. §42-87-4(b).

10. There is no requirement under the RICRA relative to the exhaustion of administrative remedies.

## VI. Material Facts

11. On or about June 28, 2008, the Plaintiff was hired by Defendant Town as part of its Labor Team for the Town's Department of Public Works ("DPW").

12. During all relevant times, the Plaintiff suffered from moderately severe chronic obstructive pulmonary disease.

13. During all relevant time periods, Defendant Town was aware that the Plaintiff suffers from moderately severe chronic obstructive pulmonary disease.

14. On or about June 27, 2017, a few DPW employees discussed Defendant Town's decision to combine breaks and lunch times in order to allow employees to leave work prior to the regular close of business.

15. While DPW employees were discussing Defendant Town's decision, the Plaintiff entered the room. At this time, Paul Andrade, a DPW employee, stated, "Oh, here comes the big fat rat b*st*rd now." Mr. Andrade made this comment because the Plaintiff was one (1) of the employees who suggested DPW policy changes.

16. After Mr. Andrade's comment, the Plaintiff immediately left the room. Subsequently, Mr. Andrade, as well as other DPW employees including, Paul Sousa, Ron Perault, and Ryan Bousquet, went to the West Warwick Town Hall and filed a complaint against the Plaintiff.

17. After the aforementioned complaint was filed, the Plaintiff worked his regular hours for two (2) days.

18. On or about June 29, 2017, Defendant Town placed the Plaintiff on an involuntary leave of absence while it conducted an investigation as to the events of June 27, 2017.

19. The Plaintiff's involuntary leave of absence lasted approximately three (3) weeks.

20. On or about July 30, 2017, the Plaintiff sent a letter to Karen Cioffi, Defendant's Human Resource Director, which outlined several incidents and/or threats against him involving fellow employees of Defendant Town.

21. The July 30th letter is not the first time the Plaintiff reported these incidents and/or threats to Ms. Cioffi or David Lombari, Acting Director of the DPW. The Plaintiff previously reported these incidents and/or threats to Ms. Cioffi and Mr. Lombari immediately after each incident occurred.

22. For example, in the fall of 2016, the oil plug on the Plaintiff's personal truck was removed while he was at work, which caused his motor to seize up and explode. When the Plaintiff returned to work the next day, he immediately informed both Ms. Cioffi and Mr. Lombari about the incident and requested that they investigate the surveillance videos in DPW's garage. Ms. Cioffi and Mr. Lombari refused to investigate the videos or the incident.

23. In addition, a West Warwick DPW dump truck, which was travelling approximately 30-35 miles per hour, attempted to hit the Plaintiff. This incident was witnessed by fellow employees and was reported to Ms. Cioffi and Mr. Lombari. Again, Ms. Cioffi and Mr. Lombari refused to investigate this incident.

24. In addition, in or about December, 2016, while the Plaintiff's truck was parked in a Sears parking lot, an employee of Defendant Town left a note which stated, "Don't worry. We will get you fired." The Plaintiff again reported this incident to both Ms. Cioffi and Mr. Lombari and again there was no investigation of this incident.

25. In his July 30th letter to Ms. Cioffi, the Plaintiff also mentioned how Shawn Riley, Union President, and the Union Steward did not properly represent him regarding previous complaints, and how they did not allow the Plaintiff to file any grievances.

26. While on his leave of absence, Defendant Town presented the Plaintiff with a "Last Chance Agreement."

27. The "Last Chance Agreement" stated that, in lieu of termination, the Plaintiff would accept a new position as Operator 1 'Spare/Truck Driver' for Defendant Town's Wastewater Facility and the Plaintiff would be issued a three (3) day unpaid suspension, which would be held in abeyance during the trial period in the new position.

28. At all relevant times, Defendant Town was aware that the Plaintiff had a need for a reasonable accommodation due to his moderately severe chronic obstructive pulmonary disease in the form of continuing to work on the Labor Team for DPW.

29. In or about August 2017, the Plaintiff attended a regular check-up with his physician, Michael J. B. Gonzalez, M.D., and informed him about the transfer to Defendant Town's Wastewater Facility. During the Plaintiff's examination, Dr. Gonzalez recommended that the Plaintiff contact Anne Herbert, M.D., FCCP, DABSM, Plaintiff's pulmonary disease doctor, about the job transfer because of its effect on his disability.

30. On or about August 10, 2017, Dr. Herbert wrote a letter to Defendant Town about the Plaintiff's moderately severe chronic obstructive pulmonary disease.

31. In the August 10th letter, Dr. Herbert opined that a job transfer to Defendant Town's Wastewater Facility would be detrimental to Plaintiff's health and exacerbate conditions associated with his moderately severe chronic obstructive pulmonary disease.

32. Despite receiving the medical note from Plaintiff's treating physician, Defendant Town failed and/or refused to engage in an open and ongoing dialogue with the Plaintiff to determine a reasonable workplace accommodation.

33. As a result, the Plaintiff was not provided a reasonable accommodation for his disability and was transferred to the Wastewater Facility.

34. On or about August 16, 2017, Mark Carruolo, Defendant's Interim Town Manager, Ms. Cioffi, Alexis Lyman, Senior Staff Representative for the Union, and the Plaintiff signed the Last Chance Agreement.

35. On or about August 17, 2017, the Plaintiff started his new position at the Wastewater Facility.

36. On or about August 17, 2017, the Plaintiff met with Bernard Bishop, a foreman at Defendant Town's Wastewater Facility. During this meeting, the Plaintiff mentioned that he suffers from moderately severe chronic obstructive pulmonary disease and that he had health concerns about working at the Wastewater Facility.

37. On or about August 18, 2017, the Plaintiff received the letter from Dr. Herbert, which outlined her concerns regarding the Plaintiff's employment at Defendant Town's Wastewater Facility due to his moderately severe chronic obstructive pulmonary disease. The Plaintiff immediately provided this letter to Mr. Bishop.

38. On or about August 22, 2017, Mr. Bishop sent an e-mail to Ms. Cioffi and Mr. Carruolo outlining some of the conversations between he and the Plaintiff regarding the Plaintiff's health, and a few observations he made throughout the Plaintiff's employment at the Wastewater Facility.

39. On or about August 24, 2017, Ms. Cioffi and Mr. Carruolo drafted a memorandum regarding the Plaintiff's temporary leave of absence to allow Defendant Town to investigate the Plaintiff's health issue.

40. On or about August 25, 2017, when the Plaintiff arrived at the Wastewater Facility, Mr. Bishop provided the Plaintiff the aforementioned memorandum and escorted the Plaintiff to the lunch room to gather his personal belongings.

41. On or about September 18, 2017, Defendant Town terminated the Plaintiff from his employment.

42. Rather than provide an accommodation reasonably required by the Plaintiff under the circumstances, specifically, keeping him on the Labor Team for DPW or provide a transfer to another Town department, Defendant Town offered the Plaintiff a life-threatening position at the Wastewater Facility in lieu of termination, and terminated the Plaintiff because of his disability.

43. The purported reason for the Plaintiff's termination was a pretext for disability discrimination.

44. Despite his disability, the Plaintiff was still qualified to perform his job with or without reasonable accommodation.

45. Defendant Town's unlawful and discriminatory actions and/or omissions are in violation of the ADA, the CRPD, the FEPA, and the RICRA and were motivated by malice and ill will toward the Plaintiff, and Defendant Town's actions were taken with reckless and callous indifference to the statutorily protected rights of the Plaintiff.

46. As a proximate result of Defendant Town's unlawful and/or discriminatory employment practices, including, but not limited to, those described herein, the Plaintiff suffered and will continue to suffer loss of income and employment benefits, including past and future

salary, damage to his business and personal reputation, mental and physical anguish, pain and suffering, and other great harm.

### VII. Claims for Relief

47. The Plaintiff incorporates in the counts below the allegations contained in paragraphs 1-46 above.

### Count One
### Unlawful Discrimination—42 U.S.C. §12101, *et seq.*

48. Defendant Town, by its acts and/or omissions, including, but not limited to, those described herein, constitute unlawful discrimination against the Plaintiff in employment on account of his disability and/or perceived disability in violation of the ADA causing the Plaintiff to suffer damages as aforesaid and thereby deprived the Plaintiff of rights secured under the ADA.

### Count Two
### Unlawful Discrimination—R.I.G.L. §42-87-1, *et seq.*

49. Defendant Town, by its acts and/or omissions, including, but not limited to, those described herein, engaged in unlawful discrimination against the Plaintiff in employment on account of his disability or perceived disability in violation of the Rhode Island Civil Rights of People with Disabilities Act, R.I.G.L. §42-87-1, *et seq.*, causing the Plaintiff to suffer damages as aforesaid and thereby deprived the Plaintiff of rights secured under the CRPD.

### Count Three
### Unlawful Discrimination—R.I.G.L. §28-5-1, *et seq.*

50. Defendant Town, by its acts and/or omissions, including, but not limited to, those described herein, engaged in unlawful discrimination against the Plaintiff in employment on account of his disability or perceived disability in violation of the Rhode Island Fair Employment Practices Act, R.I.G.L. §28-5-1, *et seq.*, causing the Plaintiff to suffer damages as aforesaid and thereby deprived the Plaintiff of rights secured under the FEPA.

## Count Four
### Unlawful Discrimination—R.I.G.L. §42-112-1, *et seq.*

51. Defendant Town, by its acts and/or omissions, including, but not limited to, those described herein, constitute unlawful discrimination against the Plaintiff in employment on account of his disability or perceived disability in violation of the RICRA, causing the Plaintiff to suffer damages as aforesaid, and thereby deprived the Plaintiff of rights secured under the RICRA.

## VIII. Prayers for Relief

**WHEREFORE**, the Plaintiff respectfully prays that this Court grant the following relief:

1. a declaratory judgment that Defendant Town, in the manner described herein, violated the ADA, the CRPD, the FEPA, and/or the RICRA;

2. enjoining and permanently restraining Defendant Town from violating the ADA, the CRPD, the FEPA, and/or the RICRA;

3. award the Plaintiff back pay, including incremental increases, pension rights and other benefits, plus prejudgment interest thereon;

4. award the Plaintiff compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, plus prejudgment interest thereon;

5. award the Plaintiff exemplary damages pursuant to the RICRA;

6. award the Plaintiff punitive damages pursuant to the ADA, the CRPD, and the FEPA;

7. award Plaintiff reasonable attorney's fees and costs of litigation pursuant to the ADA, the CRPD, the FEPA, and/or the RICRA; and,

8. such other and further relief as the Court deems just and proper.

## IX. Demand for Jury Trial

The Plaintiff hereby demands a trial by jury on all counts so triable.

## X. Designation of Trial Counsel

The Plaintiff hereby designates V. Edward Formisano, Esquire, Michael D. Pushee, Esquire, and Nicole J. Policastro, Esquire as trial counsel.

>PLAINTIFF,
>By his attorneys,
>FORMISANO & COMPANY, P.C.
>
>/s/ V. Edward Formisano
>V. Edward Formisano (#5512)
>
>/s/ Michael D. Pushee
>Michael D. Pushee (#6948)
>
>/s/ Nicole J. Policastro
>Nicole J. Policastro (#9606)
>100 Midway Place, Suite 1
>Cranston, RI 02920-5707
>(401) 944-9691
>(401) 944-9695 (facsimile)

## CERTIFICATION

I hereby certify that the within document has been electronically filed with the Court on this 7th day of December, 2018 and is available for viewing and downloading from the ECF system.

>/s/ V. Edward Formisano